## Appeal of BRUIN COAL CO.                    Docket No. 176.

The Board of Tax Appeals has jurisdiction to consider an appeal from an alleged deficiency for the year 1920 even though that deficiency is occasioned by an adjustment of its 1918 income tax return which has the effect of reducing the amount of the 1919 net loss which may be deducted under section 204(b) of the Revenue Act of 1918 from the gross income of 1920.

The cost of minor items of plant and equipment necessary to maintain the normal output of a mine may be deducted from gross income in the year in which purchased as ordinary and necessary expenses.

Submitted October 27, 1924; decided November 21, 1924.

*Roy Rose, Esq.*, for the taxpayer.

*W. Frank Gibbs, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

### FINDINGS OF FACT.

(1) The taxpayer is a corporation with its principal office at Pittsburgh, Pa., and during the years 1918, 1919, and 1920, operated a coal mine.

(2) For the calendar year 1918 the taxpayer filed a tentative return of its net income with the collector of internal revenue at Pittsburgh, Pa., and paid at that time the sum of $1,600 on account of taxes for said year. Later, the taxpayer filed a completed return for the year 1918, which showed the total tax due to be $83.13. The excess payment of $1,511.87 was claimed as a credit against the tax shown to be due on its return filed for the calendar year 1920.

(3) The taxpayer's income tax return for the year 1919 showed no tax due and a net loss of $14,092.69, which amount was increased upon an audit by the Commissioner to $19,098.24.

(4) Under date of July 15, 1924, the taxpayer was sent a letter by the Commissioner, which stated in part:

A reexamination of your income tax returns and of your books of account and records for the years 1918, 1919, and 1920 discloses an additional tax liability amounting to $5,772.06 for 1920 as shown in detail in the attached statement.

(5) The deficiency in tax for 1920 was occasioned in large part by the disallowance of claimed deductions from gross income as follows:

Empty car haul _____ $1, 471. 33
Installing empty car haul _____ 253. 42
Hoist _____ 1, 856. 00

Total _____ 3, 580. 75

and the failure to allow as a deduction the amount of the net loss for 1919 in excess of the net income for 1918. The net income found by the revenue agent for 1918 was $15,526.60 and the net loss for 1919, $19,030.71, which amount was increased by the Commissioner upon audit to $19,098.24. The net income of $15,526.60 for 1918 was in excess of the amount returned by the taxpayer, the increase being occasioned in part by a disallowance by the Commissioner of the following claimed deductions from gross income:

Steel rails _____ $3, 678. 38
Pipes _____ 1, 832. 48
Pumps _____ 1, 687. 20

Total _____ 7, 198. 06

If these claimed deductions for 1918 were allowed the excess net loss of 1919 deductible from the gross income of 1920 would be $10,769.70 (less the depreciation on $7,198.06 alleged improvements allowed as deductions for 1918 and 1919) instead of $3,571.64 ($19,098.24 net loss for 1919 minus $15,526.60 net income for 1918).

(6) The taxpayer's coal mine was opened in 1913 and in 1918 was a developed coal property which had reached its potential production.

(7) The drainage water in the taxpayer's mine is a cherry red acid water and the life of pipes through which it runs is from one month to six months, and the life of pumps used in pumping it is not much longer.

(8) The steel rails purchased by the taxpayer in 1918 were for the purpose of keeping tracks in the mine in touch with the face of the working places and were located long distances from the pit-mouth.

(9) The hoist purchased in 1920 was necessary to maintain production of the mine over a period of a few months while the haulage system in the mine was being changed from storage battery locomotive to electric trolley motors. After three months usage it was discarded and had little scrap value.

(10) Empty car haul equipment was purchased and installed for the purpose of cutting the cost of overhead at the mine. Through its installation the taxpayer was able to dispense with the services of at least six men.

DECISION.

The taxpayer was entitled to deduct from its gross income for the year 1918, $7,198.06 spent for steel rails, pipe, and pumps, and for the year 1920, $1,856 spent for a hoist. It was not entitled to deduct from its gross income of 1920, $1,471.33, cost of empty car haul, and $253.42, cost of installing car haul. The Board will determine the deficiency, if any, to be assessed upon revised computations by the Bureau of Internal Revenue, which shall be submitted by the Commissioner after due notice to the taxpayer, or upon stipulation, or upon rehearing to be set upon motion of either party.

OPINION.

SMITH: The points in issue in this case are (1) whether the Board has jurisdiction to review the disallowance of claimed deductions from the gross income of the year 1918 where such a disallowance does not result in the proposal of the assessment of an additional tax for 1918 but does affect the deficiency in tax for 1920; and (2) whether amounts paid by the taxpayer for steel rails, pipe, and pumps in 1918 and for a hoist for empty car equipment and cost of installing same for 1920 are deductible from gross income.

With respect to the first point it is contended by the Commissioner that the Board has jurisdiction under the Revenue Act of 1924 to review only deficiencies in tax relating to a given year, and that inasmuch as no deficiency in tax has been found in this case for any other year than 1920, the Board has no authority to consider whether the deductions from the gross income of 1918 which have been disallowed by the Commissioner were properly disallowed.

The Board is of the opinion that this contention is without merit. In the instant case the Board clearly has jurisdiction to consider the deficiency in tax found by the Commissioner for the year 1920. That deficiency in tax arose in part from a failure on the part of the Commissioner to allow as a deduction from the gross income of 1920 the excess of a net loss sustained by the taxpayer for the year 1919 in excess of the net income for the year 1918. Section 204 (b) of the Revenue Act of 1918 clearly gives the taxpayer the right to this deduction. Since the Board clearly has the right to review the deficiency in tax found by the Commissioner for the year 1920, it necessarily follows that it has the right to determine the correctness of the excess of the net loss of the year 1919 over the net income of 1918 which is deductible from the gross income of 1920.

The question of what constitutes the ordinary and necessary expenses of an operating mine is stated by the Commissioner in article 222 of Regulations 45 (1920 edition), as amended by Treasury Decision 3107, as follows:

All expenditures for plant and equipment shall be charged to capital account recoverable through depreciation, while the mine is in the development stage. Thereafter the cost of major items of plant and equipment shall be capitalized, but the cost of minor items of equipment of plant necessary to maintain the normal output and the cost of replacement may be charged to current expense of operation.

The Board is of the opinion that the rails, pipe, and pumps purchased in 1918 and the hoist purchased in 1920 were merely for the

purpose of maintaining the output of the mine and that they constitute expenses of operation rather than capital outlay. The empty car equipment was installed for the purpose of reducing overhead. It was installed for the purpose of doing away with the services of a number of men. The Board is clearly of the opinion that the cost of the purchase of the equipment and also of installing it was capital outlay and as such was not deductible from the gross income of 1920.